EVELYN PITTMAN, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 61767

Opinion filed May 25, 1976.

Robert F. Coleman and Robert S. Atkins, both of Freeman, Freeman & Atkins, Ltd., of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

A jury awarded plaintiff, Evelyn Pittman, the sum of $27,000 against the city of Chicago as damages for personal injury she sustained as a result of the negligence of the city in maintaining a sidewalk. The trial court granted the city's motion for a new trial and this court allowed plaintiff's motion for leave to appeal from that order.

The issues for review are as follows:

1. Did the court commit reversible error in refusing to give the city's instruction advising the jury that plaintiff must prove the city

had actual notice of the dangerous condition or that such condition had existed for so long a time that in the exercise of ordinary care it should have been noticed;

2. Was plaintiff guilty of contributory negligence as a matter of law; and

3. Was the verdict excessive.

Plaintiff, a 56-year-old woman, was employed and each working day was afforded a ride to and from her place of employment at a candy factory where she was a candy separator. Plaintiff's travel arrangement necessitated she be picked up and dropped off at an intersection a short distance from her home.

On the date of the accident, April 6, 1971, at 5 o'clock in the evening she was walking home after being dropped off. When she reached the 5100 block of North Clark Street, she commenced to walk on the east side in a northerly direction. Photographs in evidence depict the walk to have an abundance of holes, large cracks, and uneven slabs. Plaintiff's heel caught in one of these holes and she fell forward, upon her nose.

She was removed by a Chicago Fire Department ambulance to the hospital where she was afforded emergency treatment and advised to seek further diagnosis and treatment from a specialist who was department head of Eye, Ear and Nose Service at Edgewater Hospital. He examined the injury and found a compound nasal fracture with a deviated nasal septum. The tissue had broken open and a portion of the nasal bone and cartilage protruded from the nose. The septum was pushed to one side and down causing a flattening of the nose and obstruction of the airways. Plaintiff was immediately prepared for surgery which required an incision and then the internal membrane was separated from the cartilage. Another incision was made on the other side for the same purpose. A section of cartilage which had twisted upon itself was removed, and the remaining portion and bone was placed in its normal position.

A third incision was made inside the nose to remove pulverized bone and the remaining bone structure was placed in an approximate normal position. The incisions were then sutured so that healing would return the nose as near as possible to its normal state. A vaseline saturated gauze packing was applied to hold the remaining bone and cartilage in a normal position, and dressings and a metal splint were then applied.

Plaintiff experienced a great deal of pain and suffering and was administered a variety of drugs to reduce and alleviate her condition. Plaintiff also took a drug to dry the nose mucus and prevent or minimize mucus and pus discharges from her nose. After two days in the hospital she was sent home, suffering pain and discomfort. A few days later the surgeon removed the inside packing and the outside sutures and then

applied new dressings after suctioning off an accumulation of mucus. Subsequent visits followed and on June 3, 1971, the surgeons discharged her from any need of further treatment or observation. As a result of the injury she remained home and had a $400 loss of income, and $1,560 medical expenses. There is a disfiguring scar on the dorsum, and absent bone particles cause a deformity of her nose structure.

Plaintiff concedes that the city is not liable if it did not have actual or constructive notice of the defective sidewalk for a sufficient time prior to the injury. She argues, however, that it was undisputed that plaintiff's evidence established that the defect or dangerous condition existed for at least 6 years before the occurrence and hence no factual question was thus presented, and therefore, the issue was properly decided by the court without a jury determination. At the close of plaintiff's case, the city unsuccessfully argued for a directed verdict in its favor because it contended that the evidence failed to establish actual or constructive notice. At the conference on instructions, the trial court advised counsel that the instruction touching on notice would be submitted, but when they returned to open court the trial court altered its position and advised counsel it would deny the city's notice instruction. Thereafter, when the trial court was in the process of reading the instructions to the jury, the court proceeded to read the notice instruction. Plaintiff's counsel interjected and reminded the court that the notice instruction had been denied. The court then told the jury to disregard the instruction and the court withdrew it from the set of instructions going to the jury.

We find that the instruction should have been given, but we do not hold under the circumstances that such error would justify depriving plaintiff of her judgment. Plaintiff's testimony regarding how long she had noticed the presence of the dangerous and defective sidewalk left something to be desired.

On direct examination of plaintiff the only evidence adduced regarding constructive notice was as follows:

" * * * the sidewalks are bad up there, we all slow down, we are always slow."

In addition, Plaintiff's Exhibit No. 1 was an 8 x 10 glossy photograph depicting the hole plaintiff tripped over and an extensive view of the sidewalk in that block, and went into evidence with a stipulation as to its authenticity.

It was only on cross-examination by the city that additional evidence came into the record regarding constructive notice. The two portions relied upon by plaintiff are as follows:

City Attorney: "Did you normally pass the area at 5051 North Clark Street on your way home from work?

Plaintiff: Yes, I had to pass there every day.

City Attorney: * * * if you walked by the scene of the accident every day did you also notice the hole or crack?

Plaintiff: * * * Yes, they were always there."

* * *

City Attorney: " * * * did you always walk on or near 5051 North Clark Street when you were coming home from work?

Plaintiff: I had my ride up there, yes.

City Attorney: During those whole six years?

Plaintiff: Yes, I had to get my ride, yes."

A reading of the testimony strongly suggests that the dangerous condition, as depicted in the photograph, existed for the entire time plaintiff travelled this block while employed at the candy factory; to wit, six years. However, the photograph itself adequately reveals that the sidewalk was and had been in a defective and dangerous condition for a protracted period of time. The city attorney argued to the jury that only a cement mason, contractor or engineer would be qualified to express an opinion as to how long the dangerous condition had existed as depicted by the photograph. We disagree. The age and duration of the dangerous conditions at bar were easily discernible to the most pedestrian witness as having been in existence for a very long time, and such opinion was not within the sole province of an expert opinion. We note that the purpose of the photograph was to depict the hole plaintiff stumbled over, rather than to support the issue of constructive notice, but an exhibit may be relied upon for more than one purpose.

It is interesting to note that the city attorney also argued as follows:

" * * * in other words, how long has that defect been there? * * * there has been no evidence to that effect in this case."

However, later in his argument, he said, when touching upon the issue of contributory negligence of plaintiff:

City Attorney: " * * * Mrs. Pittman fell as a result of her own fault.

* * * Mrs. Pittman * * * she had been living in the area and in her present residence for approximately six years * * * she always took the same route home. She walked along that sidewalk every single day that she went to work and she knew that that hole was there, she knew the condition of the sidewalk, but yet took no steps to circumvent those circumstances by walking around that bad area. So on the day she fell she knew what she was getting into. She testified that this was a dangerous area, yet continued to walk on it."

The city attorney sought to convince the jury that the defect and dangerous condition was there for a prolonged period of time, and that plaintiff by her daily use for six years was well aware of the condition, yet

persisted in utilizing the sidewalk and thus brought about and contributed to causing her own misfortune. The city attorney then earnestly argued the issue of notice and endeavored to convince the jury that there was no evidence of the duration of the defect, arguing: " * * * we don't know if the defect was there for two weeks, for three weeks, three months, or for three years." Of course, what counsel argues is not evidence, but we believe plaintiff's testimony and the photograph are sufficient to establish evidence to support constructive notice.

■■ As we initially said in regard to this issue, the failure to give the instruction was error, but we find, from a review of the record at bar, that the city was not prejudiced by the failure to have the jury afforded this instruction.

■■ The second issue concerns contributory negligence of plaintiff. In response to the city's special interrogatory, the jury found her not guilty of contributory negligence. We find nothing in the record, nor did the trial court, to set aside that response and resulting judgment.

As to the damages awarded, we do not find them excessive.

■■ We hold therefore that the trial court abused its discretion in the awarding of a new trial to the city. At the time the trial court awarded the new trial, the court expressed its reasons. The court found the damages were not excessive but related "It is true that the lady did not testify how long this condition—of what she thought; how long she thought the condition, or how long she knew the condition existed. And this case sort of worries me a little bit." The court also said, "However, I think there was sufficient evidence to producing, although there wasn't a lot of evidence produced in this case, I think there was sufficient evidence in this case to show Clark Street was in a bad condition * * *."

The judgment of the trial court awarding the city a new trial is hereby reversed and the cause is remanded with directions to reinstate the judgment in favor of plaintiff.

Reversed and remanded with directions.

HAYES and JIGANTI, JJ., concur.